UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RICHARD FRANKLIN MYERS,         )
                                )
    *Plaintiff*,                 )   No. 1:14-cv-271-HSM-SKL
                                )
v.                              )
                                )
COMMISSIONER OF SOCIAL SECURITY,)
                                )
    *Defendant*.                 )
                                )

## REPORT AND RECOMMENDATION

Plaintiff Richard Franklin Myers ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party moved for summary judgment [Doc. 16, 19], and this matter is now ripe. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 16] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 19] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

I.   ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his current applications for DIB and SSI in June of 2007 alleging disability as of April 1, 2006, the day after a prior unfavorable determination (Transcript [Doc. 11] ("Tr.") 324, 329, 370). Plaintiff's claims were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"), but later withdrew that request

(Tr. 80-83, 132, 202). The Appeals Council for the Social Security Administration ("SSA") vacated the dismissal and remanded the case for further proceedings (Tr. 89). On December 10, 2010, following a hearing, an ALJ found that Plaintiff was not under a "disability" as defined in the Act (Tr. 98-108). The Appeals Council vacated the decision and remanded the case to an ALJ for further evaluation (Tr. 92-94).[1] Following remand and a subsequent hearing, an ALJ issued a decision on October 11, 2013, finding Plaintiff not disabled because Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy (Tr. 10-24). The Appeals Council denied Plaintiff's request for review (Tr. 1-3), making the ALJ's decision dated October 11, 2013 (Tr. 10-24), the final, appealable decision of the Commissioner. Plaintiff timely filed the instant action [Doc. 1].

---

[1] In remanding the case, the Appeals Council stated:

> The mental residual functional capacity does not adequately describe the claimant's mental limitations. Finding 5 sets forth the claimant's mental residual functional capacity in terms of mild mental limitations. The Appeals Council notes these terms are not specific and do not adequately identify the claimant's maximum mental functional capability. As explained in 20 CFR 416.945 and Social Security Ruling 96-8P, the assessment of residual functional capacity must reflect the claimant's maximum functional capability despite his limitations. Further evaluation is warranted.
>
> Upon remand the Administrative Law Judge will:
>
> Obtain additional evidence concerning the claimant's impairments, including updated records from his treating medical sources, in order to complete the administrative record in accordance with the regulatory standards regarding existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence may include, if warranted and available, consultative examinations with psychological testing and medical source statements about what the claimant can still do despite the impairments.

(Tr. 92).

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born in 1970, and alleges he became disabled beginning April 1, 2006, at the age of 35 (Tr. 324). Plaintiff has at least a high school education (Tr. 22).

### B. Medical Records

Plaintiff alleges disability due to constant back, neck, and leg pain; depression; and anxiety (Tr. 351, 385, 410). Plaintiff's arguments to the Court center on his mental impairments. Plaintiff received mental health treatment at Cherokee Health Systems from 2006 to 2008 (Tr. 18, 662-91, 712-719, 823-27). Plaintiff reported symptoms of low energy, paranoia, interrupted sleep, and anxiety around crowds and in stores (Tr. 18, 673, 688, 712, 825). When attending regular visits, Plaintiff reported his antidepressant medication was quite helpful (Tr. 18, 667, 714). After several years without mental health treatment, Plaintiff was treated at the Helen Ross McNabb facility from 2011 to 2013 (Tr. 18, 902-41). Only select portions of Plaintiff's medical records will be addressed within the respective sections of the Court's analysis below, but all relevant records have been reviewed.

### C. Hearing Testimony

The Court has carefully reviewed the transcripts of the testimony at the hearings. While it is not necessary to summarize the testimony herein, the testimony will be addressed as appropriate herein.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

3

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The SSA determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

4

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through March 31, 2009 (Tr. 12). At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since April 1, 2006, the alleged onset date, although Plaintiff did report some earnings and some volunteer work (Tr. 12-13). At step two, the ALJ found Plaintiff had the following severe impairments: back disorder, obesity, social anxiety disorder, a depressive disorder, and an anxiety disorder not otherwise specified (Tr. 13-14). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 14). The ALJ specifically considered Listings 12.04 and 12.06, and further considered the effects of Plaintiff's obesity (Tr. 14-17). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, except that Plaintiff was restricted to only occasionally performing postural activities. The ALJ further found Plaintiff was capable of performing simple routine repetitive tasks, but was limited to work requiring no interaction with the general public (Tr. 16-22). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (Tr. 22). At step five, the ALJ noted that Plaintiff was a younger individual on the alleged onset date, had at least a high school education, and was able to communicate in English (*id.*). After considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("Grids") as a framework for his decision and considering the testimony of a vocational expert, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 22-23). These findings led to the ALJ's determination that Plaintiff

was not under a disability at any time from the alleged onset date, April 1, 2006 through October 11, 2013, the date of the decision (Tr. 23-24).

IV.   ANALYSIS

Plaintiff alleges that the ALJ erred: (1) by failing to properly assess the medical records, including his Global Assessment of Functioning ("GAF") scores[2] from the Helen Ross McNabb facility; and (2) by failing to follow the recommendation of the Appeal Council to order a mental health consultative examination.  Each of Plaintiff's arguments, which overlap to some degree, will be addressed below.

A.   **Standard of Review**

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (internal citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745

---

[2] Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 41 to 50 represent "serious," scores of 51 to 60 represent "moderate," and scores of 61 to 70 represent "mild".  *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 32-34 (4th Ed. Text Revision 2000).

F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v.*

7

*Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "an [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

    B.    **GAF Scores**

Plaintiff argues that the ALJ erred in his assessment of the mental health "medical records from treating facility Helen Ross McNabb." [Doc. 17 at Page ID # 1968]. Specifically, Plaintiff contends that the ALJ erred when he gave little weight to the GAF scores recited in the records of the Helen Ross McNabb facility because the ALJ found, in part, the facility's scores "to be predictably low." [Doc. 17 at Page ID # 1967-68 (citing Tr. 18-19)]. In addition to the "predictably low" statement contained in his written decision about the facility's GAF scores, during the last hearing, the ALJ stated: "I think that's there [sic] company policy is nobody gets a global assessment of functioning at Helen Ross McNabb over 50." (Tr. 46 ).

Defendant argues that the ALJ did not err with regard to Plaintiff's GAF scores. Defendant also appears to argue that Plaintiff's GAF scores actually support the ALJ's findings to some degree, as the Plaintiff's GAF scores from Cherokee Health Systems ranged up to 60,

which indicates moderate symptoms or impairments, after receiving treatment. Defendant contends that such scores are not inconsistent with the ALJ's RFC finding.

In his decision, the ALJ specifically addressed both the records, including GAF scores, from Cherokee Health Systems and from Helen Ross McNabb stating, among other findings:

> Medical records in notes from Cherokee Health in June 2008 refer to "possible" mental retardation or borderline intellectual functioning (Exhibit B13F). Describing a condition as "possible" does not meet the statutory definition of a diagnosis for Social Security purposes. . . . A medically determinable impairment may not be established solely on the basis of a claimant's allegations regarding symptoms . . . There are no medically acceptable tests or clinical techniques documenting that the claimant has mental retardation or borderline intellectual functioning. The record shows that the claimant attended college for one year in 1992 . . . Accordingly, I find that the claimant's alleged "possible" mental retardation or borderline intellectual functioning is not a medically-determinable impairment.
>
> There is even less basis for finding a schizoaffective disorder, which was apparently mention[ed] a couple of times in 2006 and 2007 by non-acceptable medical sources and never referred to again.

(Tr. p. 13-14).

> From 2006 to 2008, the claimant's Global Assessment of Functioning scores at Cherokee Health Systems fluctuated from 40 in May 2006 to mostly 50-60 after substantive mental health treatment (60 in September 2006, 50 in October 2006, 50 in July and August 2007, 60 in October 2007, 50-55 in December 2007, and 50-55 in June 2008 [sic]. His GAF scores at Helen Ross McNabb range in the 40's, suggesting serious impairment in social and/or occupational functioning. The claimant places great weight on these scores. While Global Assessments of Functioning are not objective standardized ratings and are not based on normative data, and have been eliminated in the <u>Diagnostic and Statistical Manual of Mental Disorders,</u> 5th Edition, they are considered as opinion evidence in disability cases. The Cherokee Health Systems ratings reflect fluctuation in the claimant's mental condition which improved to mid-range to high moderate with treatment. Some weight is given to the scores. Little weight is given to the Helen Ross McNabb scores which are not well documented in their

9

> records, many of which are not very legible. Ratings generally to
> all Helen Ross McNabb patients tend to be predictably low.

(Tr. p. 18-19) (footnotes omitted).

> As for the opinion evidence, I do not have the benefit of any
> specific assessments from any treating sources, other than the
> Global Assessment of Functioning assessments discussed above.

(Tr. 20).

A GAF score is "only a snapshot opinion about the level of functioning. . . . Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014) (citing *Nienaber v. Colvin*, No. 13-1216, 2014 WL 910203, at *4 (W.D. Wash. Mar. 7, 2014)); *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("A GAF score is thus not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues.") (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009)); *Ackermann-Papp v. Comm'r of Soc. Sec.*, 1:06-CV-832, 2008 WL 314682, at *3 (W.D. Mich. Feb. 4, 2008) (finding that "a GAF score alone, without a sufficient accompanying interpretative and explanatory narrative, may admit of several different interpretations").

Although neither party directly addressed an agency administrative message instruction entitled "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication," it was discussed by the ALJ in his written decision (Tr. 18-20). *See* Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22,

10

2013) REV (Oct. 14, 2014) (hereinafter "AM-13066").³  In this administrative message, the SSA explained: "The problem with using the GAF to evaluate disability is that there is no way to standardize measurement and evaluation. Some clinicians give inflated or unrealistically low GAF ratings because the GAF rating instructions in the DSM-IV-TR are unclear . . . [this] can lead to improper assessment of impairment severity." *Brannon v. Colvin*, 3:12-CV-00827, 2015 WL 4479708, at *4 (M.D. Tenn. July 21, 2015) (quoting AM-13066).  "Unless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to little weight under [the SSA's] rules." *Id.* (quoting AM-13066).  In AM-13066, the SSA also explicitly advises ALJs that "[a] GAF rating alone is never dispositive of impairment severity. **DO NOT:** . . . Equate any particular GAF rating with a listing-level limitation . . . [or] Equate a particular GAF rating with a particular mental residual functional capacity assessment . . . [T]here is no correlation between GAF ratings and the B criteria in the mental disorders listings." *Johnson v. Colvin*, No. 3:12-CV-00443, 2015 WL 1839641, at *4 (M.D. Tenn. Apr. 21, 2015) (quoting AM013066) (emphasis in the original).  The SSA also states:

---

³ AM-13066 was initially issued in July of 2013, and acknowledges that the publication of the Fifth Edition of the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, eliminates the GAF rating for assessment of mental disorders. AM-13066 expresses several concerns about the use of a GAF rating, but clearly provides that "[f]or purposes of the Social Security disability programs, when it comes from an acceptable medical source, a GAF rating is a medical opinion." While the Sixth Circuit had consistently held ALJs were not required to expressly discuss GAF scores in their decisions, *see, e.g., Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (concluding that the failure to expressly reference GAF scores did not render the ALJ's decision inaccurate), it appears that such scores are now to be treated by ALJs as a medical opinion when it comes from an acceptable medical source.  Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."

> [A] GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

*Bryce*, 2014 WL 1328277, at *9 (quoting AM-13066, dated July 22, 2013) (emphasis omitted). Thus, AM-13066 itself explains the problems with using GAF scores to evaluate disability and it requires that GAF scores be accompanied by supporting evidence in order to be given much weight.

AM-13066 also provides that an ALJ should "consider a GAF rating as opinion evidence." *Guyaux v. Comm'r of Soc. Sec.*, No. 13-12076, 2014 WL 4197353, at *23 (E.D. Mich. Aug. 22, 2014) (quoting AM-13066, dated July 22, 2013). AM-13066 directs ALJs that "[w]hen case evidence includes a GAF from a treating source and you do not give it controlling weight, you must provide good reasons in the personalized disability explanation or decision notice."[4] *Rivera v. Comm'r of Soc. Sec.*, No. 1:13-cv-00337, 2015 WL 4550329, at * 7 (E.D. Tenn. July 28, 2015) (quoting AM-13066, dated July 22, 2013).

In this case, the ALJ discussed a myriad of evidence that supports his decision to give the GAF scores little weight. The ALJ specifically referenced Plaintiff's GAF scores, which were emphasized by Plaintiff during the last hearing, in his decision (Tr. 18-20, 46). The ALJ noted that the GAF ratings at Cherokee Health Systems were mostly in the 50 to 60 range, suggesting

---

[4] The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original).

12

generally mid-range to moderate symptoms (Tr. 18, 675, 686-87). While his GAF score fell to 40 in May 2006, his scores increased to 50, 55, and 60 after receiving treatment (Tr. 18, 668, 670, 672, 673, 676, 684, 713, 715, 823, 827). After a gap in mental health treatment for several years, Plaintiff's GAF ratings at Helen Ross McNabb ranged in the 40s, suggesting serious impairment in social and/or occupational functioning (Tr. 18, 914, 920, 929, 930, 932, 935, 936, 940). In spite of these low scores, however, the treatment records reflect Plaintiff was "doing okay" (Tr. 19, 906, 918, 924, 928). The ALJ specifically noted, among other things, that Plaintiff's GAF scores were only part of the evidence he considered and that they should not be interpreted in isolation (Tr. 19).

Plaintiff argues the ALJ improperly discounted the weight given the GAF scores based on the ALJ's unsupported comment indicating a predisposition to discount the facility's GAF scores. In support of this argument which he combines with the ALJ's failure to obtain a consultative examination, Plaintiff cites to a single, nonbinding case, *Ellis v. Colvin*, 29 F. Supp. 3d 288 (W.D.N.Y. 2014). In *Ellis*, the ALJ disregarded the Appeals Council's remand order and refused to obtain the testimony of a particular medical expert based on the ALJ's past experience with the expert. *Id*. at 299. The court in *Ellis* found that the ALJ acted arbitrarily and capriciously by declining to call a medical expert. 29 F. Supp. 3d at 302.

In contrast, here the ALJ did not refuse to consider the GAF scores or otherwise disregard the Appeals Council's remand order. Rather, the ALJ fully discussed Plaintiff's mental health treatment records, GAF scores, activities of daily living, credibility, and other pertinent factors. While the ALJ included an observation that GAF ratings from Helen Ross McNabb tended to be predictably low, the ALJ's written decision provided other valid and specific "good reason" for giving little weight to Plaintiff's low GAF ratings. While perhaps inappropriate, the ALJ's

13

unnecessary remark is harmless at most. *See Daniel v. Comm'r of Soc. Sec.*, 527 F. App'x 374, 375 (6th Cir. 2013) (holding that although the ALJ speculated that a treating source was sympathetic to the claimant, "even with possible sympathy removed from the analysis, there is other substantial evidence to support the ALJ's decision on the treating physician's credibility"); *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004) ("While some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing.").

To the extent Plaintiff is attempting to assert a bias or prejudgment argument based on the ALJ's comment, courts must start with the presumption that "policymakers with decisionmaking power exercise their power with honesty and integrity" and "any claim of bias must be supported by a '*strong showing*' of bad faith." *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436-37 (6th Cir. 2010) (citations and internal quotation marks omitted); *accord Collier*, 108 F. App'x at 363-64, (6th Cir. 2004) (citing *Navistar Int'l Transp. Corp. v. United States Environmental Protection Agency*, 941 F.2d 1339, 1360 (6th Cir. 1991)). Plaintiff has not provided any evidence the ALJ was biased other than the comment he made at the hearing and included in his written decision. With respect to that comment, the Commissioner appears to concede it was unnecessary, and while I **FIND** the ALJ's comment to be somewhat troubling, it does not indicate his decision with respect to the weight he gave the Plaintiff's GAF scores is the result of bias or bad faith.

If the ALJ's remark that the facility tended to give low scores was the only reason given or shown for the ALJ's decision to discount the GAF scores, Plaintiff's argument would be on much firmer ground. Plaintiff, however, essentially ignores the ALJ's other stated reasons for

14

giving the scores little weight, including that the scores are not well documented and/or not very legible and has made no showing to indicate these reasons are not supported by substantial evidence. While a prejudice against the facility could not be deemed a good reason for discounting the scores in isolation, that the scores are not well documented or supported by other evidence in the record are good reasons for discounting the weight given to the scores. The ALJ's "good reasons" for not giving controlling weight to the GAF assessment are supported by substantial evidence in the record.

Plaintiff also argues the ALJ failed to properly consider the evidence of his schizoaffective disorder and failed to explain why he deemed Jeffrey Greenwood, M.D. to not be an acceptable medical source. In the instant matter, Defendant did not directly address the issue of whether Dr. Greenwood is an acceptable source, but clearly he is. *See* 20 C.F.R. § 404.1513(a).. Yet, the ALJ did not refer specifically to Dr. Greenwood with Cherokee Health Systems in his discussion of evidence of schizophrenia. However, the medical record signed by Dr. Greenwood cited by Plaintiff is an initial psychiatric evaluation note dated April 17, 2006, and while the note contains a GAF score of 60, the note does not contain a diagnosis of schizoaffective disorder (Tr. 674-75). Rather, it contains an Axis I impression of depression (Tr. 675). Plaintiff also cites a medication management note "authenticated" by Dr. Greenwood and dated May, 26, 2006, that states an Axis I impression of "schizoaffective" (Tr. 673), and a partially redacted note signed by Dr. Greenwood on an unknown date that appears to have the word "schizoid" on it and an Axis I impression of "schizoaffective" (Tr. 671-72). These notes do not support Plaintiff's position in any significant way. Also, a July 3, 2007 note cited by Plaintiff appears to be a Behavioral Health Intake Form signed by a Case Management Social Worker, Christy Clairborne that states an Axis I diagnosis of "Schizophrenia, schizo-affec,

15

[unspecified, by history], depressive type" (Tr. 676).[5]

The ALJ properly noted that schizoaffective disorder was only mentioned a few times in 2006 and 2007, at least once by a non-acceptable medical source (i.e., the social worker), and that even when mentioned, it was not supported by clinical techniques or testing (Tr. 14, 672, 676, 684). Plaintiff has not pointed out any record of a diagnosis of schizophrenia by an acceptable medical source that is supported by clinical techniques or testing, and the Court will not hunt through the voluminous record looking for one. *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (holding that "[j]udges are not like pigs, hunting for truffles that might be buried in the record.") (internal citation, quotation marks, and alteration omitted); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (noting that a district court is neither required to speculate on which portion of the record a party relies, nor is it obligated to "wade through" the record for specific facts); *see also Woods*, 2009 WL 3153153, at *7 (holding that conclusory claims of error without further argument or authority may be considered waived).

Accordingly, I **CONCLUDE** the ALJ's decision with respect to the little weight he assigned Plaintiff's GAF scores is supported by substantial evidence.

### C.   The ALJ's Duty to Fairly and Fully Develop the Record

An ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400-401 (1971)). The ALJ must "ensur[e] that every claimant receives a

---

[5] A social worker is not an "acceptable medical source" and is instead an "other source" under applicable regulations. Thus, the ALJ was not required to accept her opinion or assign it any controlling weight, as the applicable regulation states the ALJ "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." *See* 20 C.F.R. § 404.1513(d); *see also Cole v. Astrue*, 661 F.3d 931, 939 n.4 (6th Cir. 2011).

16

full and fair hearing." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson*, 402 U.S. 389).[6] The duty to fully and fairly develop the record can include a duty to order a consultative examination. *See, e.g.*, *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) ("error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision"); *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (ALJ has responsibility to order consultative examination "if such an examination is necessary or helpful to resolve the issue of impairment"). The regulations state that "we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis." 20 C.F.R. § 404.1519a(b). A consultative examination may be purchased "when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on your claim." *Id.*

As quoted above, the Appeals Council remanded the case after finding further evaluation was warranted because the December 2010 mental RFC finding of "mild mental limitations" was not specific and did not adequately identify Plaintiff's maximum mental functioning capabilities (Tr. 92). The Appeals Council ordered that the ALJ obtain additional evidence concerning Plaintiff's impairments, including updated records from his treating medical sources. Contrary to Plaintiff's argument, however, the Appeals Council did not mandate a mental health

---

[6] In *Lashley*, the Sixth Circuit held that the basic duty of an ALJ to develop a full and fair record rises to a "special duty . . . where the claimant appears without counsel." 708 F.2d at 1051. This special duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and that the ALJ be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* at 1052 (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)). This special duty does not apply when a claimant is represented by counsel, as Plaintiff was in this case. *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) ("Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record.").

consultative examination; it merely noted that "additional evidence may include, if warranted and available, consultative examinations with psychological testing" (Tr. 92). The ALJ obtained additional evidence, including updated records from Cherokee Health Systems and Helen Ross McNabb (Tr. 10, 781-941), and he considered Plaintiff's maximum RFC, including specific functional limitations with respect to Plaintiff's credible mental impairments (Tr. 10, 15-16).

As argued by Defendant, pursuant to the remand order and the applicable regulations, an ALJ is only required to obtain a consultative medical examination when the evidence as a whole is not sufficient to make a decision on a claim. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b); *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013) ("Given that the record contained a considerable amount of evidence pertaining to [claimant's] mental limitations . . . the ALJ did not abuse her discretion by declining to obtain an additional assessment."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."); *see also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary.").

Plaintiff underwent continued mental health treatment between the previous ALJ decision and the Appeals Council's remand order and the record contains extensive mental health records. Given the ALJ's lengthy explanation for his RFC determination, as well as the ALJ's specific statement that he had considered the very GAF scores Plaintiff alleges the ALJ failed to adequately consider, I **FIND** that the ALJ's RFC determination is supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[7] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 16] be **DENIED**.

2) The Commissioner's motion for summary judgment [Doc. 19] be **GRANTED**.

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).